UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**WILBERT JOHN (#354835)**                                                    **CIVIL ACTION**

**VERSUS**

**BURL CAIN, ET AL.**                                                         **NO. 16-0486-SDD-EWD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 25, 2017.

                                                                            _____
                                                                            **ERIN WILDER-DOOMES**
                                                                            **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**WILBERT JOHN (#354835)**                                            **CIVIL ACTION**

**VERSUS**

**BURL CAIN, ET AL.**                                                         **NO. 16-0486-SDD-EWD**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are Defendants' Motions to Dismiss (R. Docs. 13 and 18). These Motions are not opposed.

*Pro se P*laintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against former LSP Warden Burl Cain, current LSP Warden Darryl Vannoy, Ass't Warden Stephanie Lamartiniere, Secretary James LeBlanc, Dr. Paul Toce, Dr. Cindy Parks (identified as "Nurse Parks" in Defendants' pleadings), Dr. Hal MacMurdo, Dr. Randy Lavespere, an unidentified "Head Doctor of Medical" at LSP between 2010 and 2016, unidentified additional physicians at LSP who may have seen or evaluated Plaintiff, and unidentified personnel in the office of Secretary James LeBlanc who handle administrative remedy procedures applicable to inmates at LSP. Plaintiff complains that he has been requesting an operation at LSP to cure a medical problem that he believes he is suffering with, but Defendants have allegedly failed to properly diagnose his condition and have failed to authorize the surgery that he believes he needs.[1]

---

1   A review of the record reflects that the unidentified "John Doe" defendants have not been identified or served. When Plaintiff was directed to provide information to the United States Marshal's Office relative to the identities of the parties to be served – specifically by completing

In the instant Motions, Defendants seek dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that Plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court addressed the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly, supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly, supra*. "A

---

and returning a Marshal's Form 285 – Plaintiff included the "Head Doctor of Medical" at LSP and the "James LeBlanc Administration that do ARPs" in the list of Defendants. *See* R. Doc. 8. An attempt by the Marshal to effect service upon these unidentified personnel was subsequently unsuccessful because no identifying names were provided for these individuals. *See id*. As a result, these Defendants were not served and have not appeared in this proceeding. In addition, Plaintiff has failed thereafter to take appropriate action to amend the Complaint to identify the "John Doe" defendants or to obtain service upon them. Although an inmate plaintiff is entitled to rely upon service by the United States Marshal, "a plaintiff may not remain silent and do nothing to effectuate such service. At a minimum, a plaintiff should attempt to remedy any apparent service defects of which a plaintiff has knowledge." *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987). In the instant case, Plaintiff has clearly had knowledge of non-service upon the "John Doe" defendants because (1) he was served with the Marshal's Return of Service, R. Doc. 8, that indicated that service had not been effected upon them at the offices of the Louisiana Department of Public Safety and Corrections, and (2) he has been served with all subsequent pleadings which reflect no appearance having been made by these Defendants. Notwithstanding, Plaintiff has not since propounded written discovery to Defendants seeking to obtain those identities, has not moved to amend the Complaint to better identify the "John Doe" defendants, and has not taken any action to have them served. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff, without good cause, to serve a defendant within 90 days of commencement of an action is justification for dismissal of that defendant from the proceedings. It is appropriate, therefore, that Plaintiff's claims asserted against the "John Doe" Defendants be dismissed, without prejudice, for failure of Plaintiff to timely effect service upon them. The Court further notes, as discussed hereafter in this Report, that the "Head Doctor of Medical" and the administrative personnel that handle administrative grievances at the Department level would be subject to dismissal from this proceeding in any event because of their non-direct involvement in the events complained of by Plaintiff herein.

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id*. (citation omitted). Even a *pro se* complainant, however, must plead "factual matter" that permits the court to infer "more than the mere possibility of misconduct." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678. The court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, Plaintiff alleges that since 2010, he has suffered with a condition that he believes results from "a busted line that semen carries through" to his bowel, resulting in his feces appearing to have "semen that's wrapped [a]round" it. Plaintiff alleges that he has complained about this condition and was told by Defendant Dr. MacMurdo, after a stool sample was taken, that it was just mucous that would pass away. Plaintiff alleges that Defendant Dr. Lavespere also sent stool samples to the lab and informed Plaintiff that it was mucous Plaintiff was observing.

Plaintiff also alleges that on one occasion Dr. Lavespere informed Plaintiff that he needed an unspecified operation for an unspecified condition but that the scheduling of the operation was the responsibility of the LSU Medical Center and not Dr. Lavespere. Plaintiff alleges that he and family members complained to Defendant Burl Cain about the situation, but Defendant Cain informed Plaintiff to stop bothering him and to wait to see a physician. Plaintiff alleges that he continued to seek medical attention and even went on a hunger strike "to get help" but to no avail. Finally, Plaintiff alleges that he requested a surgery referral from Defendant Parks in December 2015 and that, in response, stool samples were again taken for testing on three separate occasions. Plaintiff asserts that he has now been informed that the condition of which he complains is the result of "a bacteria that lives in the stomach called H-Pylori." Plaintiff continues to complain that he has not been scheduled for the surgery that he believes is necessary, and he complains of impotence that he apparently believes is a result of his condition.

In response to Plaintiff's allegations, Defendants first seek dismissal of Plaintiff's claim asserted against them in their official capacities for monetary damages.[2] In this regard, Defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official

---

2   Whereas Plaintiff's Complaint is unclear as to whether he is suing Defendants in their individual or their official capacities, the Court liberally interprets Plaintiff's Complaint as naming Defendants in both capacities. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (instructing that the pleadings of *pro se* plaintiffs should be interpreted liberally).

in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, Plaintiff's claim asserted against Defendants in their official capacity for monetary damages is subject to dismissal. In contrast, Plaintiff's claim for monetary damages asserted against Defendants in their individual capacities remains theoretically viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id*. at 29. In addition, a claim for injunctive relief asserted against state officials in their official capacities is not barred by the Eleventh Amendment because such a claim is also not seen to be a claim asserted against the state. *See Will v. Michigan Department of State Police, supra*, 491 U.S. at 71 n. 10; 15 Am. Jur. 2d *Civil Rights* § 101.

Turning to Plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, Defendants next assert that they are entitled to qualified immunity in connection with Plaintiff's claims. Specifically, Defendants contend that Plaintiff's allegations are insufficient to establish that any of them has participated in a violation of Plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). Taking the facts as alleged in the light most favorable to Plaintiff, the Court considers whether Defendants' conduct violated Plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-pronged analysis in a particular order – should not be "regarded as an inflexible requirement").

Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Saucier v. Katz, supra*, 194 U.S. at 201. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation that he confronted. *Id.* at 202.

Undertaking the qualified immunity analysis with respect to Plaintiff's claims, the Court concludes that Defendants' Motions to Dismiss should be granted.

It is well-settled that to prevail on an Eighth Amendment claim for the deprivation of medical care, a prisoner must be able to show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Thomas v. Carter*, 593 Fed. Appx. 338, 342 (5th Cir. 2014), *citing Estelle v. Gamble*, 429 U.S. 97 (1976). Whether Plaintiff has received the treatment or accommodation that he believes he should have is not the issue because a prisoner's mere disagreement with his medical treatment, absent exceptional circumstances, does not support a claim of deliberate medical indifference. *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006). Nor do negligence, neglect, medical malpractice, misdiagnosis or unsuccessful medical treatment give rise to a § 1983 cause of action. *See Zaunbrecher v. Gaudin,* 641 Fed. Appx. 340 (5th Cir. 2016). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994). A prison official acts with deliberate indifference only if the official (1) "knows that inmates face a substantial risk of serious bodily harm," and (2) "disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, *supra,* 463 F.3d at 346, *quoting Farmer v. Brennan, supra,* 511 U.S. at 847.

The deliberate indifference standard sets a very high bar. Plaintiff must be able to establish that Defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006), *citing Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

In addition to the foregoing, in order for a prison official to be found liable under § 1983, the official must be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be shown to be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano*

*v. Smith*, *supra*, 718 F.2d at 768.

Applying the foregoing principles, the Court finds that Plaintiff has failed to allege facts sufficient to support a claim of deliberate medical indifference on the part of Defendants. First, with regard to former LSP Warden Burl Cain, current LSP Warden Darrel Vannoy, Ass't Warden Stephanie Lamartiniere and Secretary James LeBlanc, Plaintiff alleges only that these defendants are supervisory employees "over the medical department" at LSP and have failed to ensure that subordinate medical personnel performed their duties. Plaintiff suggests, without supporting facts, that these supervisory Defendants were aware of his complaints – presumably through his submission of administrative grievances – yet they failed to respond properly thereto. These allegations are not sufficient to support a finding of liability on the part of Defendants Cain, Vannoy, Lamartiniere and LeBlanc. Specifically, Plaintiff does not allege that these Defendants, in their supervisory capacities as Department Secretary, current and former Head Wardens at LSP and Assistant Warden "over medical" at LSP, respectively, have been personally involved in examining, evaluating or treating his complaints, that they possess any qualifications or expertise as health care providers, or that they otherwise have personal knowledge relative to Plaintiff's medical condition or treatment. The most that can be inferred from Plaintiff's allegations directed at these defendants is that he believes that they were aware of his complaints – presumably because of his submission of administrative grievances – and yet failed to respond properly thereto. Notwithstanding, the law is clear that any mere alleged failure to investigate or properly respond to a prisoner's administrative grievances is not a constitutional violation, and no liability may attach as a result of such failure. *See Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005). Nor is an inmate constitutionally entitled to a fair or favorable response or result in connection with such grievances. *Id*. Thus, Plaintiff may not be heard to complain in this case regarding the manner

in which his administrative proceedings were investigated, conducted or resolved, and there is no constitutional right inherent in such a claim. Accordingly, Plaintiff's claims asserted against Defendants Cain, Vannoy, Lamartiniere and LeBlanc should be dismissed.

Turning to Plaintiff's claim asserted against the remaining defendants, Dr. Paul Toce, Dr. Hal MacMurdo, Dr. Randy Lavespere and Dr. (or Nurse) Cindy Parks, it is clear from Plaintiff's allegations that he has failed to sufficiently allege that these Defendants have been deliberately indifferent to his serious medical needs.[3] To the contrary, Plaintiff acknowledges in his Complaint that he has been seen and evaluated by medical personnel at LSP in response to his complaints, that diagnostic testing has been undertaken, that medical diagnoses have been made and communicated to him, and that follow-up evaluations and testing have been undertaken. Plaintiff further concedes that he was initially informed that his condition was diagnosed as being the result of mere "mucous" that would resolve, and that he has more recently been informed that his condition is the result of bacteria that lives in his stomach. Other than a conclusory assertion and a personal belief that he requires surgery, without any indication that this belief is medically warranted other than a self-serving allegation that Dr. Lavespere once acknowledged an unspecified need for surgery, there are no facts suggesting that surgical intervention is justified. In short, Plaintiff's allegations are not such as suggest that the medical Defendants have ignored Plaintiff's complaints, have intentionally treated him incorrectly, or have otherwise exhibited deliberate indifference to Plaintiff's serious medical needs.

---

3    The Court notes that Plaintiff has made no factual allegations whatever relative to Dr. Paul Toce and mentions this Defendant only in the Caption of the Complaint and in the list of named Defendants.

Based on the foregoing, it appears that the crux of Plaintiff's complaint in this case is not that he has been denied medical attention entirely, but rather that such attention has been inadequate, improper or delayed. Specifically, he is apparently unhappy with the care that has been provided, and he believes that additional care is warranted. He expresses disagreement with the determinations made by prison medical personnel, and he believes that his condition has been mis-diagnosed and/or mistreated. Notwithstanding, a failure to refer an inmate plaintiff for additional treatment, diagnostic testing or evaluation is a matter of professional medical judgment that the courts will not normally second-guess in the context of a claim of deliberate medical indifference. *See Cuellar v. Livingston*, 321 Fed. Appx. 373, 374 (5th Cir. 2009) (upholding the dismissal of an inmate's claim as frivolous, noting that "the question whether 'additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment,'" *quoting Estelle v. Gamble, supra*, 429 U.S. at 107. Further, as noted above, although Plaintiff is apparently dissatisfied with the medical care that has been provided to him at LSP, such dissatisfaction does not alone support a claim of deliberate medical indifference. Therefore, liberally construing Plaintiff's Complaint, the Court finds that his allegations, at best, set forth a claim of negligence, misdiagnosis and/or delay in the provision of medical care, and Plaintiff has not sufficiently alleged that any deficiencies in his care are due to deliberate indifference on the part of Defendants. Accordingly, Defendants are entitled to judgment as a matter of law in connection with Plaintiff's claim of deliberate indifference to his serious medical needs.

## **RECOMMENDATION**

It is recommended that Plaintiff's claims asserted against unidentified medical and administrative personnel be dismissed. It is further recommended that the Motions to Dismiss of the remaining defendants, Burl Cain, Darryl Vannoy, Stephanie Lamartiniere, James LeBlanc, Dr.

Paul Toce, Dr. (or Nurse) Cindy Parks Dr. Hal MacMurdo, and Dr. Randy Lavespere (R. Docs. 13 and 18) be granted, dismissing Plaintiff's claims asserted herein, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on July 25, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**